## AMERICAN CREDIT INDEMNITY CO. v. JUNG.

(Circuit Court of Appeals, Fifth Circuit.  April 11, 1912.)

No. 2,124.

**INSURANCE (§ 511\*)—CREDIT INDEMNITY INSURANCE—CONTRACTS—CONSTRUCTION.**

A credit indemnity policy insured against loss not exceeding $4,000 on accounts against persons rated by a mercantile agency above an initial loss borne by the indemnified of 2½ per cent. of his gross sales not less than $180,000.  A rider provided for losses on unrated debtors, and declared that the gross amount covered on any one debtor should be 75 per cent. of $500 gross indebtedness, and that the aggregate losses recoverable under the rider should be 75 per cent. of $4,000, and that the amount of the initial loss should be calculated on the net losses under the rider and policy.  *Held*, that the policy and rider constituted one contract, and under it the liability of insurer was limited to $4,000 on both rated and unrated accounts, and the liability on unrated accounts did not exceed $3,000, and the net amounts of losses covered by the rider must enter with the net amounts of all other losses covered and proven under the policy in calculating the amount from which the initial loss must be deducted, and, where the agreed initial loss exceeded the aggregate amount of the net covered and proven losses so ascertained, there was no sum due to the indemnified.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1296, 1297, 1299; Dec. Dig. § 511.\*]

In Error to the Circuit Court of the United States for the Eastern District of Louisiana.

Action by L. E. Jung against the American Credit Indemnity Company.  There was a judgment of the Circuit Court (180 Fed. 510) for plaintiff entered on a directed verdict, and defendant brings error.  Reversed and remanded.

This is a suit brought to recover on an indemnity insurance policy issued by the American Credit Indemnity Company to L. E. Jung, indemnifying him, upon certain conditions and limitations, against losses on sales made in his business.

The contract provided: First. The company "hereby guarantees L. E. Jung, of New Orleans, La., engaged in the business of wholesale liquors, to an amount not exceeding four thousand dollars against actual loss in excess of the initial loss of not less than forty-five hundred dollars to be borne by the indemnified as hereinafter provided, which may be sustained by the indemnified through the insolvency of debtors, as hereinafter defined, occurring during the term of this bond, and be covered under and proved in accordance with the provisions hereof, on the indemnified's sales of merchandise shipped and delivered during the term of this bond, in the usual course of said business, to individuals, firms, copartnerships or corporations in the United States of America, or in the Dominion of Canada."  Second. "The said initial loss to be borne by the indemnified shall be two and one-half per cent. of the total amount of the gross sales by the indemnified of merchandise shipped and delivered during the term of this bond in said United States and Dominion of Canada; but said percentage shall be calculated on sales of not less than $180,000; and said initial loss shall be deducted, as hereinafter provided, from the aggregate amount of the net covered proved losses ascertained in the adjustment."  In this case it was agreed that the gross sales of the plaintiffs were $206,988.80, and the initial loss to be borne by him was $5,174.72.  Third. The net covered losses from the aggregate of which the initial loss was to be deducted before any liability of the insurer

began is determined by clause 2 of the policy, and a rider attached to and made part thereof and incorporated therein, which, with the rider, reads: "(2) Coverage: No loss is covered by this bond unless the debtor to whom the goods were shipped and delivered shall have in the latest published book of the Dun & Co. Mercantile Agency, at the date of the shipment, one of the ratings of the said agency, both as to capital and credit, as tabulated below. The gross amount to be covered on any one insolvent debtor shall be limited to thirty per cent. of the lowest amount of his capital rating where the first credit rating follows,. but shall also be limited to $2,000 gross; and shall be limited to thirty per cent. of the lowest amount of his capital rating where the second credit rating follows, but shall also be limited to $2,000 gross. * * * By this rider attached to and made part of Bond No. 51,612 C, issued * * * to L. E. Jung * * * it is agreed that· the following provisions shall be added to and made part of section 2 of this bond: If the governing rating is a rating not covered under the body of said section 2, or if it is blank as to capital or credit, or both ("blank, blank"), a loss on such debtor, if otherwise coming within the provisions of this bond, shall be covered to the following extent: The gross amount covered on any one such insolvent debtor shall be seventy-five per cent. of the indebtedness at the time of his insolvency, but shall be limited to seventy-five per cent. of $500 gross. Provided, that the aggregate of the net losses included in the adjustment under this bond on all debtors coming within the provisions of this rider shall be limited to seventy-five per cent. of $4,000. The net amounts of proven losses covered under this rider shall enter with the net amounts of all other losses covered and proved under this bond in calculating under section 6 the amount from which the initial loss, to be borne by the indemnified, shall be deducted, and this rider shall in all respects have the same effect as if its provisions had been incorporated in the body of said section No. 2." It is admitted in this case that the plaintiff's losses sustained under the policy, as modified by the rider were $954.73 on rated accounts and $17,-496.73 on unrated accounts. Fourth. In section 6 of the policy, under the head of "Adjustment," it is provided: "In the adjustment there shall be deducted from each gross loss covered and proven under this bond the amounts collected thereon, the actual value of all securities and guarantees held by the indemnified, or for his benefit, the amount of goods returned or replevied, and the amounts which from any other source have been obtained or shall be thereafter obtainable. * * * From the aggregate amount of the net .covered and proven losses thus ascertained there shall be deducted the agreed initial loss to be borne by the indemnified, and the balance, if any, not exceeding the amount of the bond, shall be the amount due the indemnified." On' the trial in the court below each party asked a directed verdict in his favor. The trial judge refused to direct a verdict for the defendant below, and charged the jury to find a verdict for the plaintiff for $3,954.73 on the theory that the entire amount of losses on unrated accounts was to be taken into consideration in determining the initial loss to be borne by the plaintiff; and, the initial loss having thus been provided for, that the plaintiff was entitled to recover $974.73 loss on rated accounts plus 75 per cent. of $4,000 on unrated accounts.

Verdict and judgment having been rendered accordingly and new trial refused, the indemnity company sued out this writ of error.

Edgar H. Farrar, for plaintiff in error.

Solomon Wolff (Charles J. Theard, on the brief), for defendant in error.

· Before PARDEE and SHELBY, Circuit Judges, and MAXEY, District Judge.

PARDEE, Circuit Judge (after stating the facts as above). On a policy similar to the one in this suit, this court in Peden Iron &

Steel Company v. Ocean Accident & Guarantee Corporation, 151 Fed. 992, 81 C. C. A. 178, said:

"Plaintiff in error further contends that the provision in the rider, to wit, 'the net amount of loss on such debtors thus ascertained shall be added to the losses covered by the terms and conditions in the body of this contract, and shall be adjusted in accordance with the provisions in lines 53 to 67 of said contract,' should be construed as though the words 'as far as practicable' were written therein, and that accordingly, as there was no loss on rated accounts equal to the initial loss provided for in the contract, the said initial loss is irrelevant and immaterial and so far inapplicable, and not to be taken into consideration in determining the loss on unrated accounts; and therefore, as the loss on unrated accounts exceeded the amount of the guarantor's liability thereon, the plaintiff in error is entitled to a judgment for the full amount of the limit. If this contention cannot be maintained, the plaintiff in error further contends that the proper adjustment under the contract would be to deduct the initial loss from the combined loss on rated accounts under the policy and on unrated accounts under the rider, which would leave $4,525.89 as the proper amount for plaintiff in error to recover. Neither of these contentions is well founded. With the exception of the involved sentence in the rider (the matter heretofore discussed), the policy and rider attached are plain and unambiguous. In fact, there is only one policy in the case. Under that, as we construe it, the liability of the guarantor to the insured is limited to $10,000 on both rated and unrated accounts, the liability on unrated accounts not to exceed $5,000. The initial loss of one-third of one per cent. on the whole business of the insured is to be deducted from the net loss or insolvent accounts coming within the terms of the agreement before any liability of the company can attach. The method of adjustment is specially provided for in the lines 53 to 67 of the contract, and it is adopted and made applicable by the last provision in the rider."

Following that case, we hold that there is only one policy, and under the plain terms of that policy the liability of the indemnity company is limited to $4,000 on both rated and unrated accounts, the liability on unrated accounts not to exceed $3,000. And it seems to be clear under the contract that, before the indemnity company shall be liable for any loss, L. F. Jung is to bear an initial loss, which in this case is agreed to be $5,174.72. The rider provides that the aggregate net loss to be included in the adjustment coming within the provisions of the rider shall be limited to 75 per cent. of $4,000—that is to say, $3,000—and that such net amount of proven losses covered by the rider shall enter with the net amounts of all other losses covered and proven under the policy in calculating under section No. 6 the amount from which the initial loss shall be deducted. And section 6 provides as follows:

"From the aggregate amount of the net covered and proven losses thus ascertained there shall be deducted the agreed initial loss to be borne by the indemnified and the balance, if any, not exceeding the amount of this bond, shall be the amount due to the indemnified."

It is agreed that the net amount of losses on rated accounts covered by the policy amounts to $954.73, and the net amount of losses on unrated accounts that can be considered and enter into the adjustment and determination of liability is $3,000, making the sum $3,954.73 as the aggregate of the net covered and proven losses of the indemnified within the meaning of and during the term of the policy.

As the agreed initial loss exceeds the aggregate amount of the net covered and proven losses ascertained under the provisions of the

contract, there is no balance due to the indemnified under the policy in suit.

We think that counsel are misled in construing the provisions of this policy because credit insurance is unlike most, if not all, other kinds of insurance, in that the insured has to carry an agreed initial loss before the indemnifying company is liable for any loss, and that, where such insurance is made or purports to be made to also cover losses incurred on unrated accounts, some provision has to be made limiting the terms under which losses on such unrated accounts can be considered in determining the proper amount of initial loss to be borne by the insured or else the premium to effect such insurance would be prohibitive.

To answer the contention made by counsel in this case that the construction claimed by the indemnity company and herein given by this court is practically to deny the insured any insurance on unrated accounts, it is only necessary to say that under the particular facts in this case, if the insured did not have any insurance on unrated accounts, it results from the particular facts, and not from ambiguity in the terms of the contract. If Jung had shown a loss of $5,174.72 on rated accounts, he would be entitled to receive $3,000 on unrated accounts.

On the admitted facts in this case, the verdict of the jury in the court below should have been directed for the indemnity company.

The judgment is reversed, and the cause is remanded, with instructions to award a new trial.