LAKELAND SILEX BRICK CO. v. JACKSON & CHURCH COMPANY.

168 So. 411.
Division A.
Opinion Filed May 22, 1936.

*Patrick H. Mears,* for Plaintiff in Error ;
*Campbell* and *McLean,* for Defendant in Error.

PER CURIAM.—In February, 1925, Jackson & Church Co.,. defendant in error, hereafter referred to as the plaintiff, sold two brick presses and two material hoppers for the total price of $17,600.00 to the Lakeland Brick & Tile Mfg. Co., and thereafter, on July 15th, 1925, filed a retain-title contract for the same in the office of the Circuit Court of Polk County, Florida.

On July 28th, 1925, the Lakeland Brick & Tile Mfg. Co. gave the plaintiff a note for $3,922.16 which represented the

balance due on the purchase price of the above mentioned machines, $3,866.66, and certain other charges due and owing to the plaintiff amounting to $55.50. On December 19th, 1925, and January 12th, 1926, $500.00 and $2,000.00 respectively were paid on the note. A meeting of the creditors of the Lakeland Brick & Tile Mfg. Co. was held in November, 1926, and a representative of the plaintiff attended the meeting; on April 11th, 1927, C. W. Cadwell, president of the defendant company, and past president of the original purchaser company, foreclosed a mortgage on certain property of the Lakeland Brick & Tile Mfg. Co. which included the brick presses and material hoppers above mentioned, and became the purchaser thereof at the foreclosure sale. Cadwell, in turn, deeded the machines to the corporation known as the Lakeland Silex Brick Company, plaintiff in error, hereafter referred to as the defendant.

In May, 1934, the defendant wrote the plaintiff denying the plaintiff's title and right to possession, and in June of the same year the plaintiff began this action of replevin to recover possession of the machines. The plaintiff obtained a verdict in the Circuit Court of Polk County, Florida, and the defendant on writ of error contends that the trial court erred in not submitting the defendant's pleas of limitations and laches to the jury.

The plaintiff's replications to such pleas contained averments that the defendant did not refuse to deliver possession of the said machines until May 9th, 1934; that the plaintiff still had title to the machinery by the retail-title contract, and that the defendant acknowledged the plaintiff's right to the possession of the said machines and promised to pay for the same; all of which occurred within the time prescribed by the statute of limitations. Certain communications relied upon to prove these replications were

attached thereto. The defendant demurred to these rep-
lications and the trial court overruled the demurrer. No
error was assigned on this ruling.

The communications which were attached to the rep-
lications acknowledged the plaintiff's title and contained re-
peated promises to pay. Quotations from some of the
letters so attached are:

July 8th, 1927. "* * * as soon as matters can be cleared
up here (I) will begin payment on your account against
the presses."

May 14th, 1928. "* * * as soon as it is possible for us
to make some money we certainly will be glad to commence
the reduction of your account."

February 23rd, 1931, by his attorneys. "His suggestion
is that if you want to leave the presses in the plant until
such time as he can resume operations and begin to get
some business, he will then do his best to discharge his
balance as speedily as possible."

Feb. 21st, 1931. "I am unable to pay the amount owing
on the presses at present. I am going to ask you to let the
presses stand where they are."

Feb. 25th, 1931. "Rest assured I shall do my best to
meet this obligation as soon as is humanly possible * * *"

Jan. 22nd, 1934. "I know that you can take these presses
from me."

About two weeks before the defendant's attorney wrote
the plaintiff denying that the plaintiff had title, the defend-
ant wrote the plaintiff seeking to get the refusal of the ma-
chines since he could not pay the balance due on them and
since the plaintiff contemplated the sale of them.

April 23rd, 1934. "I am writing to ask if you will not
advise me the price at which you are willing to sell these

presses, and give me the refusal at that price for a limited period of time."

There was uncontradicted evidence of repeated promises to pay the balance due on the machines with the exception of one letter written by the defendant denying liability, but which was corrected by his attorney, stating: "At the time of writing you some weeks ago Mr. Cadwell had not heard about his account in quite a long time * * * Naturally, if there is a retain title on the presses for the balance unpaid, he will expect to pay that, if he wants to keep the presses."

In view of the uncontradicted evidence, the trial court properly excluded the question of limitations and laches from the consideration of the jury. The letters clearly acknowledge the debt and a repeated desire and intention to pay it, to take the cause out of the statute. See Hall v. Brown, 80 Fla. 481, 86 So. 277.

The defendant further contends that the giving of the note extinguished the original contract, and that there was a presumption of novation which the plaintiff failed to rebut.

The plaintiff contends that the note was taken as mere evidence of the debt and in no way as payment.

The certain title contract specifically provided that: "The title and right of possession to the material herein specified shall not pass from the party of the first part until all payments hereunder (including deferred payments and payments of notes and renewals thereof, if any) shall have been fully made in cash."

No action which would pass title of the property reserved by the plaintiff was ever begun. It possessed and owned the notes when this action was instituted. The plaintiff also still owned and possessed the original contract of sale, which had never been assigned. It had, in fact, done noth-

ing which showed any intention of abandoning its rights under the contract. A contract of conditional sale reserving title in the seller is not ordinarily changed to one of absolute sale by the fact that the buyer gives a note whereby he promises unconditionally to pay the purchase price. See 13 A. L. R. 1044 and authorities cited.

In Leven v. Wilton, 136 Pa. St. 61, 19 Atl. 945: "The title to the horse was still in the vendor, and the giving of the note did not make any change in that respect. A note given for an existing debt is not payment, unless it be accepted as such. The presumption is that it is not to be payment unless it is paid."

In Beall v. Hudson County Water Co., 195 Fed. 179: "A promissory note, as its name implies, is but a promise to pay, and ordinarily is no payment if it is not itself paid; but it may amount to payment if the creditor so intended. Such intention, however, is not to be resolved against the creditor except by clear and convincing evidence. The burden of proof is upon him who claims the benefit of such discharge."

Where there is an express agreement between the parties to a conditional sale of goods that title is not to pass until the payment of purchase-money notes, or until a payment in cash; the sale remains conditional until such payment is made. See Harkness v. Russell, 118 U. S. 663, 30 Law. Ed. 285, 7 Sup. Ct. Rep. 51; Monitor Drill Co. v. Mercer, 20 L. R. A. (N. S.) 1065, 90 C. C. A. 303, 163 Fed. 943, 16 Ann. Cas. 214; Riley v. Dillon, 148 Ala. 283, 41 So. 768; Van Allen v. Francis, 123 Cal. 474, 56 Pac. 339; Anderson Carriage Co. v. Bartley, 102 Me. 492, 67 Atl. 567; Haynes v. Temple, 198 Mass. 372, 84 N. Ed. 457; Pettyplace v. Groton Bridge & Mfg. Co., 193 Mich. 155, 61 N. W. 266.

In Solomon v. Pioneer Co-operative Co., 21 Fla. 374, 58 A. R. 667, this Court said: "The intention of the parties as to whether the bill or note was given and received is a controlling element in the issue, and is a question of fact for the jury. May & Sloon v. Gamble, 14 Fla. 496."

The question of novation is controlled by the intention of the parties, and is a proper question to be submitted and determined by the jury after considering the evidence.

The court charged the jury that if they found, as a matter of fact, that the note placed the defendant in a worse position than it was first in, or that it placed the plaintiff in a better position than it was when the first contract was made, then there was a presumption that it was a novation. He further charged that it was not a conclusion, but a presumption that may be rebutted, and the burden of rebutting that presumption under those conditions was upon the plaintiff.

The charge was fair to the defendant, and the jury, by their verdict, found that it was the intention of the parties that the note was not "given and received" in payment and satisfaction of the plaintiff's retain title contract, but was given as evidence of the debt. There was ample evidence to sustain this finding.

Judgment affirmed.

WHITFIELD, C. J., and BROWN and DAVIS, J. J., concur.

ELLIS, P. J., and TERRELL and BUFORD, J. J., concur in the opinion and judgment.