344 So.2d 273 (1977)
Harold TAINES et al., Appellants,
v.
CAPITAL CITY FIRST NATIONAL BANK, a National Banking Corporation, Appellee.
No. CC-150.
District Court of Appeal of Florida, First District.
March 30, 1977.
Rehearing Denied April 18, 1977.
*274 Brian T. Hayes, Monticello, for appellants.
William M. Smith and Timothy B. Elliott of Ausley, McMullen, McGehee, Carothers & Proctor, Tallahassee, for appellee.
ERVIN, Judge.
This is an appeal by appellants from a final summary judgment finding appellants, as accommodation parties, liable to appellee Bank on a promissory note. On *275 March 8, 1974, Terrell-Brown and Company, Inc., executed a promissory demand note[1] payable in one year to Capital City First National Bank. Demand for full payment was made by the Bank in September, 1974. When payment was not made, suit was filed in October, 1974. The Taines, however, were not then personally served. In January, 1975, the Bank and the obligors who were served entered into a stipulation[2] while the suit was in progress, which was filed in the Circuit Court of Leon County, Florida. Subsequently, the terms of the stipulation went into default; service of process was perfected on the Taines and the Taines answered the complaint on the original note alleging that the stipulation was a novation; thereby denying their obligation, and asserting that the effect of the stipulation was to extend the period of time for payment of the note without their consent, change the interest rate, calling for the payment of interest monthly; thus altering the original note without their consent, resulting in their being discharged from the original obligation.
The Taines' only issue on appeal from the final summary judgment is whether the court erred as a matter of law in granting summary judgment to the Bank in view of the terms of the stipulation. The Taines contend they were discharged from liability on the note as a result of (1) the terms of Section 673.606(1)(a), Florida Statutes (1975)[3] and (2) novation.
The Taines assert that Section 673.606(1)(a) controls, arguing that the Bank's agreement to withhold action in the litigation so long as Terrell-Brown complied with the terms of the stipulation acted as a suspension of its right to enforce the note against Terrell-Brown, thus discharging them. The operative words in the above section, however, are "without such party's consent" and "without express reservation *276 of rights... ." The original note's provisions included the following clause:
"The undersigned also agree to any extensions or renewals of this note without further notice, binding the undersigned for payment thereof as if no extensions or forbearance of payment had been made or granted."
Uniform Commercial Code Comment Number Two to Section 673.606(1)(a) states:
"Consent may be given in advance, and is commonly incorporated in the instrument; or it may be given afterward. It requires no consideration, and operates as a waiver of the consenting party's right to claim his own discharge."
Comment Number Four states in part:
"This section retains the right of the holder to release one party, or to postpone his time of payment, while expressly reserving rights against others."
The Taines having consented to a renewal or extension of the note are in no position now to complain that the agreement to suspend litigation operated as a discharge.
The Taines argue however that the stipulation is more than a mere extension of the note because it involves an agreement to withhold pending litigation between the Bank and other obligors to the note. We do not feel that this is a material distinction. Since the decision to withhold action was entirely dependent upon Terrell-Brown's compliance with the terms of the extension agreement, we fail to see any resulting prejudice to Taines  assuming that the stipulation was nothing more than an extension note.
The Taines argue additionally that the stipulation drastically altered without their consent the terms of the original note, changing it from a demand note payable no later than one year after execution to an installment note payable in two and one half years, as well as providing a different rate in interest, resulting in a novation and thereby extinguishing the original obligation. If Taines' position is correct then, of course, they must be discharged. There is no question but that the character of the original note was materially changed. The question then is whether the alteration was such as to result in not merely an extension of the old note, but an extinguishment of it.
A novation is a mutual agreement between the parties concerned for the discharge of a valid existing obligation by the substitution of a new valid obligation. It ordinarily consists of two stipulations, one to extinguish the old debt and the other to substitute a new one in its place. 23 Fla. Jur., Novation, Section 2 (1959). The rule is not satisfied by the substitution of one paper for another or one evidence of a debt for another, but only by the substitution of a new obligation for another with intent to extinguish the old. Murphy v. Green, 102 Fla. 102, 135 So. 531 (1931). One of the circumstances to consider in determining whether a novation occurred is the intention of the parties. Lakeland Silex Brick Company v. Jackson and Church Company, 124 Fla. 347, 168 So. 411 (1936).
It is our opinion that notwithstanding the differences in the character of the two notes there was no such alteration which could reasonably be viewed as extinguishing the original debt. True the method of payment was extended for a longer period of time than was originally agreed. The rate of interest was not variable but was a constant 10% throughout the term of the note. Yet the alteration in the terms of the two notes was no greater than the alteration of certain notes which the Fifth Circuit Court of Appeals in Northwest Acceptance Corp. v. Heinicke Instrument Co., 441 F.2d 887 (5th Cir., 1971), held did not constitute a novation. In the Northwest case, suit was brought by a finance company, Northwest, against a Florida manufacturer, Heinicke, which by contract acted as surety on its customers' notes which had been discounted to the financing company. The contract provided that Heinicke could sell its customers' notes and security to Northwest and that Heinicke would endorse or assign the paper to Northwest. It further provided *277 that in case of default in payment by the customer, Heinicke would repurchase the paper sold upon demand of Northwest. Northwest sued Heinicke following default by a customer. The two original notes given by the customer provided for 8.5% interest and named Heinicke as payee. They also contained standard extension clauses. After the due date of each note, two additional notes were executed by the customer directly to Northwest. Both the additional notes were for a smaller amount than the original notes and both at the rate of 10.5% interest instead of the original 8.5%. The old notes were not cancelled or returned to the maker. The lower court held that these additional notes were not renewal notes since there was both a material change in the indebtedness and the interest rate was raised. Although pursuant to the terms of the contract, Heinicke gave Northwest the power to grant extensions of time, the lower court held that the mere extension of time, as in the case of a renewal note, is substantially different from an extension of time coupled with both a different payee and a higher interest rate, as a result Heinicke was ordered discharged.
The Fifth Circuit Court of Appeals reversed, holding that the contract in separate assignments between the parties gave Northwest the power not only to grant extensions of time but also to compromise and adjust new rates against Heinickes' customers and to otherwise handle the making of collections in accordance with Northwest's business judgment. It also held that Northwest's acceptance of the renewal notes did not constitute a novation, stating:
"Although there has been general disagreement concerning the effect of a renewal note upon the original, the view in Florida is that a renewal note does not operate as a payment or discharge of the note in renewal of which it is given unless there is an express agreement between the parties to that effect. Cheves v. First National Bank, 79 Fla. 34, 83 So. 870, 872 (1920); Board of Public Instruction v. State, 145 Fla. 482, 199 So. 760 (1941); 4A Fla.Jur., Bills, Notes § 192. In the Cheves case the vendors, acting through a bank, sold property to the vendees, who executed two $1,000 notes to the bank. Unable to pay one of the notes and in return for an extension of time, the vendees executed a new note for $1,335, which was the principal plus interest due under the first note, and at the same time executed a mortgage in favor of the bank. Although the new note had a different face value, the court held that there could not be a discharge of the original indebtedness or a novation absent express agreement to that effect. In the case sub judice there was no evidence of an express agreement or an intent that the new ReMac notes were to discharge the underlying debt. On the other hand, the new notes were marked on the ledger cards as renewal notes and Northwest retained the original notes  a further indication of intent not to extinguish the underlying obligation." 441 F.2d at 891.
We simply cannot, based upon this record, accept the Taines' argument that the stipulation represented an intention by the parties to extinguish the original debt. While the terms of the original obligation were altered, the principal amount remained outstanding. The original note was never cancelled. The stipulation was at most the substitution of one evidence of debt for another without any intent to extinguish the old.
Nor do we feel that the rights of the accommodation endorsers were prejudiced by the conversion of the demand note into a time note. The Taines' rights to pay off the obligation and become subrogated to the Bank's interest against Terrell-Brown would be no different had the terms of the demand note been merely extended rather than converted into an installment note. While an accommodation party, if he pays the note, has a right of recourse on the instrument against the party accommodated, nevertheless the holder of either a demand or a time note is not required to accept tender of payment and may elect to *278 exercise his option, if consent to extend the note has previously been given, to enforce the terms of the additional extension.[4] This does not mean that the accommodation party has no remedies. The holder of an instrument, notwithstanding the accommodated party's consent to extend, may not extend an instrument over the objection of a party who tenders full payment when the instrument is due. Section 673.118(6), Florida Statutes (1975). Thus, had the Taines upon the expiration date of the original obligation, and notwithstanding their prior consent to any extensions or renewals of the note without further notice, made full tender of the balance outstanding, the Bank could not have extended the instrument over the objection of the Taines and the Taines would have been discharged to the extent of all subsequent liability for interest, costs, and attorney's fees. Section 673.604(1), Florida Statutes (1975). They would not, however, be discharged from liability on the demand note.
In Benders U.C.C. Service, Hart and Willier, Commercial Paper § 13.21(1) at page 13-50, it is stated:
"An extension may be optional with the holder, meaning technically that he is under no obligation to accept payment when the instrument is initially due. However, this rule is tempered by Sections 3-118(f) and 3-604(1) which state that, if any party tenders payment on the due date, the holder is not obligated to accept, but he will be unable to collect interest, costs, and attorney's fees subsequent to that time. This means that while an accommodation party may have given his consent in advance to an extension, he may foreclose the holder's option and preserve immediate recourse against prior parties, including the principal debtor. If he was an accommodation maker or acceptor, his rights would be only against the principal debtor since intervening parties would be discharged. An accommodation endorser preserves his rights against any prior parties, including endorsers prior to himself. In any event, if he does not tender payment, the holder may make the optional extension with impunity and the accommodation party by his consent is deprived of his discharge." (Emphasis added.)
Thus it is obvious that the rights of the Taines would be the same whether the agreement merely extended the terms of the original demand note, or as here converted the demand note into a time note. Whatever rights they have could only come into effect had they performed the affirmative act of offering payment upon maturity of the original obligation, thus insulating them from any further liability under the terms of the extension agreement and preserving their immediate right of recourse against the party accommodated. Moreover, since the original obligation was not extinguished, the Taines could tender payment even after the note was initially due and be relieved from any further liability. The record shows, however, the Taines made no tender of payment. Therefore, the accommodation parties, by their prior consent, are deprived of discharge.
The final summary judgment is affirmed.
MILLS, Acting C.J., and SMITH, J., concur.
NOTES
[1] The note was for the principal sum of $250,000.00, with interest to be set at 1 1/2% above the Chase Manhattan prime rate, but not less than 8% or greater than 15%. It also provided that no individual obligor would be liable for interest in excess of the maximum interest rate allowed to be charged individuals under Florida law, and further provided that the signatories agreed to any extensions or renewals without further notice. The Taines were four of nine individual endorsers on the note.
[2] The stipulation provided:

"1. Bank will withhold further action in this litigation so long as Terrell-Brown complies with the terms hereof.
2. The undersigned Hugh S. Glickstein is attorney for the defendants, Terrell-Brown & Company, Inc., Robin Brown and Lillian Wade Brown, his wife, and Roger Terrell and Elizabeth Terrell, his wife, and hereby accepts service of the Complaint filed herein on behalf of said defendants.
3. Terrell-Brown has paid and the Bank has accepted principal payment of $20,000 and interest of $8,039.72 and applied same to Terrell-Brown's indebtedness described in the Complaint which indebtedness now stands at $180,000 plus interest from December 23, 1974 at 10% per annum.
4. Terrell-Brown agrees to meet and Bank agrees to accept the following schedule of payments on the indebtedness described in said Complaint:
(a) Interest at the rate of 10% per annum payable monthly beginning February 1, 1975.
(b) In addition, principal payments of $20,000 each shall be made on July 1, 1975, and each calendar quarter thereafter (October 1, January 1, April 1, July 1) until the unpaid balance is paid in full.
5. Terrell-Brown agrees that it will not institute a defense or counter claim of usury if these proceedings are reopened for any reason.
6. Bank agrees that it will not, so long as the agreements contained herein are complied with, assess or attempt to collect costs of litigation or attorneys' fees from Terrell-Brown as provided in the note which is the subject of this litigation. Dated this 15th day of January, 1975."
[3] The Section states:

"(1) The holder discharges any party to the instrument to the extent that without such party's consent the holder:
(a) Without express reservation of rights releases or agrees not to sue any person against whom the party has to the knowledge of the holder a right of recourse or agrees to suspend the right to enforce against such person the instrument or collateral or otherwise discharges such person, except that failure or delay in effecting any required presentment, protest or notice of dishonor with respect to any such person does not discharge any party as to whom presentment, protest or notice of dishonor is effective or unnecessary; ..."
[4] Notes which are payable on demand include those payable on sight or on presentation and those in which no time for payment is stated. § 673.108, Fla. Stat. (1975). Moreover, presentment of the note is not optional to both the holder and the parties obligated on the instrument. Presentment is a demand for payment made upon the party obligated to the holder. § 673.504, Fla. Stat. (1975).